**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**GABINO RAMOS HERNANDEZ**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 2:17-cv-123-TBM-MTP**

**PHILLIP CAUSEY *and* THE**
**UNITED STATES OF AMERICA**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES'**
**RENEWED MOTION TO DISMISS AND GRANTING PHILLIP CAUSEY'S**
**MOTION FOR RECONSIDERATION**

On the evening of July 16, 2016, Immigration and Customs Enforcement ("ICE") Officer Phillip Causey was called to Gabino Ramos Hernandez's home to allegedly assist with translation services for an unrelated traffic stop. Hernandez was standing in the garage when the ICE van arrived, and upon seeing the van, Hernandez ran away. Two ICE agents, including Phillip Causey, chased Hernandez. Hernandez stopped running and, in the light most favorable to Hernandez, had his hands raised when Causey shot him. Now before the Court is the United States' Motion to Dismiss [120] Hernandez's tortious supervision and training claim and partial motion to dismiss Hernandez's claim for negligent use of deadly force, and Causey's Motion for Reconsideration [129] of the Court's Opinion [89] denying his Motion for Summary Judgment. For the reasons discussed fully below, the United States' Motion to Dismiss [120] is granted and Causey's Motion for Reconsideration [129] is granted.

**I. PROCEDURAL HISTORY**

Hernandez filed suit in this Court on July 20, 2017. He argues that Causey violated his Fourth, Fifth, and Fourteenth Amendment rights to be free from an unreasonable and excessive use of deadly force pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). Hernandez also asserts three separate causes of action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b): 1) use of deadly force; 2) assault and battery; and 3) negligent training and supervision.

On August 31, 2018, this Court stayed the case because Causey was deployed overseas on active military duty.[1] After Causey completed his deployment, the Defendants filed a combined Partial Motion to Dismiss [68] for lack of subject matter jurisdiction as to the negligent training and supervision claim under the FTCA and a Motion for Summary Judgment [68] as to the other claims. In its Memorandum Opinion and Order [89], this Court first addressed Hernandez's negligent training and supervision claim and dismissed it without prejudice for failure to state a claim.[2] This Court found that by failing to plead a constitutional violation Hernandez did not meet the minimum pleading requirements to withstand dismissal under the discretionary function exception to the FTCA. Despite failing to meet his burden, the Court allowed Hernandez to file an amended complaint alleging a proper constitutional violation.

This Court then turned to Causey's Motion for Summary Judgment. Despite well-established Supreme Court precedent holding that the *Bivens* question is "antecedent" to the question of qualified immunity, Causey provided no briefing and made no objection as to whether Hernandez could bring suit under the *Bivens* framework for a Fourth Amendment excessive force claim. *Hernandez v. Mesa*, --- U.S. ----, 137 S. Ct. 2003, 2006, 198 L. Ed. 2d 625 (2017) *(Hernandez I)*. Even after Hernandez analyzed the *Bivens* question in his Response in Opposition to Causey's Motion for Summary Judgment, Causey still raised no objection to the validity of

---

[1] Throughout this action Causey has been, and is currently, deployed overseas. *See* [29] (staying case until November 30, 2018); [31] (staying case until September 15, 2019); [107] (staying discovery and disclosure deadlines).

[2] The United States' Motion to Dismiss only sought dismissal of Hernandez's negligent training and supervision claim, as discovery related to the intentional tort claims was ongoing. Accordingly, Hernandez's claims for use of deadly force and assault and battery were not addressed in the Court's Opinion [89].

Hernandez's claims under *Bivens*. Accordingly, the Court addressed the *Bivens* question *sua sponte* and found Hernandez's *Bivens* claim against Causey was the kind of Fourth Amendment search-and-seizure case that courts have adjudicated through *Bivens* actions. [89], pg. 13. After determining that Hernandez's *Bivens* claim did not present a "new context," the Court found a genuine issue of material fact as to where Hernandez's hands were positioned at the time of the shooting and denied Causey's Motion for Summary Judgment on the basis of qualified immunity.

Following the dismissal of Hernandez's negligent training and supervision claim, Hernandez filed an Amended Complaint [106] alleging that the United States is liable for the "tort[i]ous and wrongful supervision and instruction of Phillip Causey and other deportation agents involved in Plaintiff's shooting, in direct contravention of the Plaintiff's Fourth Amendment rights." [106], ¶ XXXVII. Hernandez asserts that ICE supervisors instructed Causey to conduct unreasonable seizures "based solely on a person's Mexican or Hispanic ancestry," by assisting local police officers with pretextual requests for translation services. *Id*.

Now before the Court is the United States' renewed Motion to Dismiss [120] Hernandez's tortious supervision and training claim and partial motion to dismiss Hernandez's claim for negligent use of deadly force. Causey has also filed a Motion for Reconsideration [129] of the Court's Opinion [89] denying his Motion for Summary Judgment based on the Supreme Court's ruling in *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).[3] Hernandez does not argue that Casey waived reconsideration of the *Bivens* issue by not addressing it previously. For the reasons discussed fully below, the United States' Motion to Dismiss [120] is granted and Causey's Motion for Reconsideration [129] is granted. Specifically, this Court lacks subject matter jurisdiction over

---

[3] Causey timely filed his original Motion for Reconsideration [102] on June 18, 2021, which the Court denied without prejudice pending the outcome of the Supreme Court's decision in *Egbert*.

Hernandez's tortious training and supervision claim because it is barred by the discretionary function exception of the FTCA. Additionally, Hernandez fails to state claim for the use of deadly force asserted against the United States with respect to conduct by any ICE agent other than Causey. Finally, Hernandez's Fourth Amendment claim presents a new context under *Bivens*, and since special factors counsel hesitation in extending the *Bivens* remedy to this context, this Court cannot find a *Bivens* remedy.

## II. THE UNITED STATES' MOTION TO DISMISS HERNANDEZ'S TORTIOUS AND WRONGFUL TRAINING AND SUPERVISION CLAIM

In his Amended Complaint, Hernandez asserts a tortious and wrongful training and supervision claim against the United States, alleging that "[n]ot withstanding the prohibition of the Fourth Amendment against unreasonable seizures based solely on race . . . ICE supervisors allowed, encouraged and instructed Phillip Causey . . . to stop and question any Hispanic who might be stopped by a local police officer under a pretextual request for assistance with Spanish," without reasonable suspicion. [106], ¶ XXXVIII. The United States argues that Hernandez's tortious training and supervision claim must be dismissed for lack of subject matter jurisdiction because Hernandez's claim is barred by the discretionary function exception of the FTCA. Specifically, the United States argues that Hernandez cannot escape the discretionary function exception to the FTCA by "couching his claim in terms of a constitutional violation." [112], pg. 1. In his Response, Hernandez asserts that his tortious training and supervision claim is not barred by the discretionary function exception because government officials have no discretion to violate the constitution. The question before the Court, then, is whether an alleged constitutional violation—rather than a statutory, regulatory, or policy violation—precludes the application of the discretionary function exception.

**A. Standard of review**

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court may find lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Wells v. Ali*, 304 Fed. App'x 292, 293 (5th Cir. 2008) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161.

**B. The Federal Tort Claims Act and the discretionary function exception**

"Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) (citation omitted). "Sovereign immunity protects the federal government from being sued without its consent." *Doe v. United States*, 831 F.3d 309, 319 (5th Cir. 2016) (citation omitted). It is well established that Congress has waived the sovereign immunity of the United States by giving courts jurisdiction over certain torts committed by government employees under the FTCA. 28 U.S.C. § 1346(b).

The FTCA provides consent for suit against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA was "designed to afford easy and simple access to the federal

courts for persons injured by the activities of government without the need to resort to private bills for the purpose of obtaining compensation." *Sutton v. United States*, 819 F.2d 1289, 1292 (5th Cir. 1987) (internal quotations omitted) (quoting *Collins v. United States*, 783 F.2d 1225, 1233 (5th Cir. 1986)). Its passage grew out of "a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work." *Dalehite v. United States*, 346 U.S. 15, 27–28, 73 S. Ct. 956, 964, 97 L. Ed. 1427, 1436 (1953).

"The liability of the United States under the FTCA, however, is subject to various exceptions contained in 28 U.S.C. § 2680, including the 'discretionary function' exception." *Spotts v. United States*, 613, F.3d 559, 566 (5th Cir. 2010). "The discretionary function exception withdraws the FTCA's waiver of sovereign immunity in situations in which, although a government employee's actions may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy[.]" *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). Specifically, the discretionary function exception bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Gibson v. United States*, 809 F.3d 807, 811 (5th Cir. 2016) (quoting 28 U.S.C. § 26080(a)). If a case falls within this statutory exception to the FTCA, the court lacks subject matter jurisdiction. *Campos*, 888 F.3d at 730.

Courts employ a two-part test in determining whether the discretionary function exception applies: (1) "the conduct must be a 'matter of choice for the acting employee;'" and (2) "the judgment [must be] of the kind that the discretionary function exception was designed to shield.'" *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (citations omitted). "[T]he purpose of

the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 322. Thus, "when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Id.* (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)).

Here, Hernandez does not dispute that the "decision to assist a local police officer with translating Spanish would involve an 'element of judgment or choice.'" [122], pg. 21. Instead, Hernandez argues that, under the second prong of the *Gaubert* test, "the decision to assist a local police officer with translation in a DUI stop was not grounded in public policy, and as such was not the type of decision the discretionary function exception seeks to protect." *Id.* at 20-21. The basic premise of Hernandez's argument is that "the supposed decision to assist local police with translation was merely a pretext to avoid the mandates of the Fourth Amendment, and as such, is not subject to the discretionary function exception." [122], pg. 20.

## C. Whether a constitutional violation precludes the application of the discretionary function exception

The Supreme Court has held that if "a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Spotts*, 613 F.3d at 567 (citing *Gaubert*, 499 U.S. at 329). Alternatively, if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow [,]" then the action is mandatory and cannot be shielded under the discretionary function exception. *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499 U.S. at 322-25. "In other words, the discretionary function exception does not apply if the challenged actions

in fact violated a federal statute, regulation, or policy." *Spotts*, 613 F.3d at 567 (citing *Gaubert*, 499 U.S. at 324).

Hernandez explains that he does not bring a cause of action against the United States for a Fourth Amendment violation, "but rather for the injuries he suffered under Mississippi law as a result of the negligent manner in which the entire operation was conducted." [122], pg. 13. Hernandez's Fourth Amendment violations are therefore asserted only to negate the United States' discretionary function defense—not as part of his FTCA claim. Under this "creative dichotomy, an FTCA plaintiff would prove (1) first the substantive FTCA state-law negligence claim, and (2) next, a federal violation of the [constitution by a Government employee] that would negate the defendant United States' discretionary function defense to the plaintiff's state-law claim." *Shivers v. United States*, 1 4th 924, 928 (11th Cir. 2021). This argument is, in effect, a "constitutional-claims exclusion." *Shivers*, 1 4th at 928.

Whether a constitutional violation, rather than a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception has been an area of much discussion over the years. Many courts have disagreed on how to handle it. And the Fifth Circuit has not decided the issue. Indeed, "[w]hether a properly plead constitutional violation allows a plaintiff to circumvent the discretionary function exception is an open question in this circuit." *Doe v. United States*, 831 F.3d 309, 319 (5th Cir. 2016).[4]

---

[4] *Doe*, 831 F.3d at 319-20 (finding that because the plaintiff failed to plead a proper constitutional violation, the question is not before the court); *see also Lopez v. U.S. Immigr. & Customs Enf't*, 455 F. App'x 427 (5th Cir. 2011) (declining to address the issue); *Castro v. United States*, 560 F.3d 381 (5th Cir. 2009) (*Castro I*) (reversing and remanding for the district court to consider to what extent the alleged constitutional violations are cognizable under the FTCA); *Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) (*Castro II*) (en banc) (concluding that the discretionary function exception applies and affirming the district court's finding that the constitutional claims are moot).

While there is controversy over this question, it is this Court's duty "to construe a statute consistent with the intent of Congress as expressed in the plain meaning of its language. 'There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.'" *Sutton*, 829 F.2d at 1292 (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, 60 S. Ct. 1059, 1063, 84 L. Ed. 1345, 1350–51 (1940)). The Court's objective when construing an exception to the FTCA "is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n.9, 104 S. Ct. 1519, 79 L. Ed. 2d 860 (1984) (quotation omitted).

Thus, to determine whether a properly pleaded constitutional violation circumvents the discretionary function exception, the Court must begin with an analysis of the text of the statute itself. The discretionary function exception provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 26080(a).

Significantly, "the language Congress chose in § 2680(a) is unqualified—there is nothing in the statutory language that limits application of this exception based on the 'degree' of the abuse of discretion or the egregiousness of the employee's performance." *Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021). In fact, the word "[a]ny" suggests that the discretionary function exception applies despite the nature of the claim, and regardless of whether the discretion was exercised in a permissible manner. Nowhere within the plain language of FTCA does it provide

that a constitutional violation may serve as a basis for casting aside the discretionary function exception. Thus, the statutory language does not support Hernandez's argument.

Since the Fifth Circuit has not addressed the issue, it is important to note there is a circuit split.[5] As a result, the Court will address the opinions most persuasive beginning first with the Seventh Circuit's opinion in *Linder v. United States*, 937 F.3d 1087 (7th Cir. 2019), cert. denied, ––– U.S. ––––, 141 S. Ct. 159, 207 L. Ed. 2d 1097 (2020), and then turning to the Eleventh Circuit's opinion in *Shivers v. United States*, 1 F.4th 924, 931 (2021), cert. denied, --- U.S. ----, 142 S. Ct. 1361, 212 L. Ed. 2d 322 (2022).

In *Linder* the Seventh Circuit held "the theme that 'no one has discretion to violate the Constitution' has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations. It applies to torts, as defined by state law[.]" *Linder*, 937 F.3d at 1090. The court went on to explain that:

> The limited coverage of the FTCA, and its inapplicability to constitutional torts, is why the Supreme Court created the *Bivens* remedy against individual federal employees. And when, in the wake of *Bivens*, Congress adopted the Westfall Act to permit the Attorney General to substitute the United States as a defendant in lieu of a federal employee, it prohibited this step when the plaintiff's claim rests on the Constitution. 28 U.S.C. § 2679(b)(2)(A). This leaves the FTCA as a means to seek damages for common-law torts, without regard to constitutional theories.

---

[5] *Loumiet v. United States*, 828 F.3d 935, 944–46 (D.C. Cir. 2016) (finding that discretionary function exception does not "provide blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription."); *Limone v. United States*, 579 F.3d 79, 101–02 (1st Cir. 2009) (finding that where the plaintiffs proved allegations of unconstitutional conduct, that such conduct "negat[es] the discretionary function defense"); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (concluding that the discretionary function exception did not apply to allegations that the FBI conducted surveillance activities in violation of the First and Fourth Amendments; *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). Conversely, the Seventh and Eleventh Circuits have looked to the text of the FTCA and found an alleged constitutional violation does not circumvent the discretionary function exception of the FTCA because the FTCA applies to violations of statutes, regulations, or policies—not constitutional violations. *Linder v. United States*, 937 F.3d 1087 (7th Cir. 2019), cert. denied, ––– U.S. ––––, 141 S. Ct. 159, 207 L. Ed. 2d 1097 (2020); *Shivers v. United States*, 1 F.4th 924, 931 (2021), cert. denied, --- U.S. ----, 142 S. Ct. 1361, 212 L. Ed. 2d 322 (2022).

*Id.* According to the Seventh Circuit, "unless § 2680(a) is to be drained of meaning, it must apply to discretionary acts that are tortious. That's the point of an *exception*: It forecloses an award of damages that otherwise would be justified by a tort." *Id.* (emphasis in original). Thus, the Seventh Circuit found that the discretionary function exception applied to the tort claims arising from an alleged constitutional violation.

Since the Seventh Circuit's opinion in *Linder*, other courts have agreed with its finding that the FTCA does not apply to constitutional violations, including the Eleventh Circuit, the district court for the District of Utah, and the district court for the District of New Mexico. *Shivers*, 1 F.4th 924; *Ramirez v. Reddish*, No. 2:18-cv-176-DME, 2020 WL 1955366 (D. Utah Apr. 23, 2020).[6]

In *Shivers v. United States*, the Eleventh Circuit held that because "the FTCA is not based on alleged constitutional violations, . . . a plaintiff cannot circumvent the limitations on constitutional tort actions under *Bivens*—including the qualified-immunity doctrine—by recasting the same allegations (1) as a common-law tort claim under the FTCA that is not subject to the discretionary function exception or (2) as negating the discretionary function defense." *Shivers*, 1 F.4th at 931. The Eleventh Circuit highlighted that the inquiry under the FTCA is "not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one." *Id.* at 931. Because the plaintiff did

---

[6] In *Ramirez v. Reddish*, the plaintiffs failed "to identify any federal statute, regulation or policy that specifically prescribed the course of action Task Force members should have taken" and instead, asserted only that federal employees have no discretion to violate the Constitution. *Ramirez*, 2020 WL 1955366, at *28. The court found that the "discretionary function inquiry is not whether federal law grants an employee affirmative 'discretion to violate the Constitution.'" *Id.* Instead, the court explained that the inquiry focuses on "whether the conduct at issue in a given case involved a federal employee's exercise of discretion or was, instead, specifically mandated by federal statute, regulation, or policy such that the federal officer really had no discretion as to how to act—at least with regard to his challenged conduct." *Id.* The court declined, "without explicit congressional, Supreme Court, or Tenth Circuit direction," to analyze "the constitutionality of the federal employee's conduct challenged under the FTCA into the otherwise straightforward inquiry that § 2680(a) and the Supreme Court have prescribed[.]" *Id.*; *see also Ashley v. United States*, No. 1:20-cv-154-SWS, 2020 WL 8996805 (D. N.M. Nov. 2, 2020).

not identify a statute, regulation, or policy that specifically prescribed a course of action that the prison employees failed to follow—and because "the Eighth Amendment itself contains no such specific directives"—the court found that the discretionary function exception applied even if the prison officials violated the plaintiff's Eighth Amendment rights. *Shivers*, 1 F.4th at 931.

Here, as in the cases discussed above, Hernandez does not identify a specific statute, regulation, or policy that specifically prescribes a course of action that Causey, or fellow ICE agents, failed to follow. Instead, Hernandez argues that the United States is liable for the "tort[i]ous and wrongful supervision and instruction of Phillip Causey and other deportation agents involved in Plaintiff's shooting, in direct contravention of the Plaintiff's Fourth Amendment rights." [106], ¶ XXXVII. However, Congress enacted the FTCA to address violations of "state tort law" by governmental employees—not constitutional violations. "Congress left no room for the extra-textual 'constitutional-claims exclusion' for which [Hernandez] advocates." *Shivers*, 1 F.4th at 930. As the Supreme Court has stated, "[t]here is no justification for this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it." *Rayonier Inc. v. United States*, 352 U.S. 315, 320, 77 S. Ct. 374, 1 L. Ed. 2d 354 (1957).

Because only Congress may waive sovereign immunity, this Court is bound by the explicit waiver found within the discretionary function exception itself. In construing the text of the FTCA as it is written, as this Court must do absent Fifth Circuit or Supreme Court authority on this issue, the United States has not waived sovereign immunity for alleged constitutional violations under the FTCA. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (finding that the FTCA "does not provide a cause of action" for a constitutional tort claim). While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses,

12

papers, and effects, against unreasonable searches and seizures," it does not contain a specific directive as to the conduct of ICE agents for purposes of this narrow claim. U.S. CONST. amend. IV. Thus, the conduct at issue here—the training and supervision of the ICE agents involved in the allegedly pretextual stop and the decision to assist local police with translation services for a DUI stop—was discretionary. Any allegedly "tortious acts (including allegedly unconstitutional tortious acts) in exercising that function fall within § 2680(a)'s discretionary function exception." *Shivers*, 1 F.4th at 933.[7]

Because Hernandez's tortious and wrongful supervision claim falls within the discretionary function exception to the FTCA, the Court lacks subject matter jurisdiction, and the claim must be dismissed. *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018).

### III. THE UNITED STATES' PARTIAL MOTION TO DISMISS HERNANDEZ'S NEGLIGENT USE OF DEADLY FORCE CLAIM

In its Motion to Dismiss, the United States submits that "during a recent status conference with the Court, [Hernandez] asserted for the first time that his negligence claim encompassed the alleged negligent conduct of all ICE officers on the scene on the night of the shooting." [120], pp. 1-2. Based on these representations, the United States seeks to dismiss Hernandez's negligent use of deadly force claims based on the actions of anyone at the scene of the shooting other than Causey. The United States asserts that Hernandez fails to meet his burden because he "cannot simply group a bunch of federal employees together and hope that discovery will shake out some information that will aid his claim." [124], pg. 3. In his Response, Hernandez states that his "position is that the United States can be liable under the FTCA for the negligence of any or all the deportation officers present that night." [122], pg. 4. Accordingly, the only question before the

---

[7] The Court makes no finding as to whether Hernandez has stated a claim for a Fourth Amendment violation.

Court is whether Hernandez has stated a claim for negligent use of deadly force against the United States with respect to the actions of unnamed ICE agents on the night of the shooting.

## A. Standard of review

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). However, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citing *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Id.* (citation omitted). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## B. Hernandez's negligent use of deadly force claim under the FTCA

While a plaintiff seeking relief under the FTCA brings his tort claims directly against the United States, the FTCA nonetheless requires that a private person would be liable for the same conduct under the state law where the claim arose. 28 U.S.C. § 1346(b); *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 1472–73, 64 L. Ed. 2d 15 (1980). Here, Hernandez asserts a negligent use of deadly force claim against the United States under Mississippi law. To state a claim for negligence in Mississippi, a plaintiff must allege that there was a "duty or standard of care, breach of that duty or standard, proximate causation, and damages or injury." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 78 (Miss. 2017). The United States does not dispute that Hernandez has sufficiently alleged "what Officer Causey's duty and conduct were" on the night of the shooting. [124], pg. 4. Instead, the United States asserts that Hernandez has failed to plead a negligent use of deadly force claim with respect to any conduct by any ICE officer other than Causey.

Specifically, the United States argues that "Hernandez provides no facts that would allow the Court to conclude whether the alleged conduct [of the unnamed ICE officers] would constitute a private party tort under Mississippi law." [121], pg. 6. In his Amended Complaint, Hernandez asserts that "an unknown Immigration and Customs Enforcement officer or agent caused Plaintiff significant and grievous injury by the negligent use of deadly force." [20], ¶ pg. 4. "[A]s a result of the wrongful or negligent conduct of Phillip Causey and John Doe, and the negligence or fault

of Defendants, The United States of America, and its agencies, . . . Plaintiff has suffered enormous pain and suffering." *Id.*

"At the pleading stage, the plaintiff must allege facts that demonstrate unlawful conduct." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020) n. 18 (5th Cir. 2020). But here, Hernandez's pleadings do not sufficiently identify the conduct of specific ICE agents, apart from Causey. Instead, Hernandez relies on conclusory allegations that unknown ICE agents were involved or participated in the events leading to the shooting.[8] Even if the Court accepts these allegations as true, Hernandez does not plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). Indeed, Hernandez alleges a single use of deadly force: Causey shooting him. In failing to identify the other ICE agents, or their alleged wrongful behavior, Hernandez has failed to allege "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 662).

Accordingly, the Court finds that Hernandez fails to meet his burden at the pleadings stage. His claim for negligent use of deadly force against the United States, at least the claim that is based on the actions of anyone at the scene of the shooting other than Causey, is dismissed.

## IV. CAUSEY'S MOTION FOR RECONSIDERATION

On July 18, 2022, Causey filed a Motion for Reconsideration [102] of the Court's Memorandum Opinion and Order [89] denying his Motion for Summary Judgment. Causey argues that based on the Supreme Court's ruling in *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022), and the

---

[8] A number of depositions were taken and written discovery exchanged before Hernandez filed his Amended Complaint.

Fifth Circuit's ruling in *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021), Hernandez's *Bivens* claim must be dismissed as it is a "new context" and because special factors counsel hesitation about granting an extension.

The Court notes that while this matter has been pending since 2017, Causey made no argument prior to the filing of his initial Motion for Reconsideration [102] that Hernandez's *Bivens* claim is unavailable for Hernandez's excessive force claim. Indeed, Causey did not argue that a *Bivens* remedy was unavailable in his initial Answer [39] or any of his summary judgment briefing—despite Hernandez's discussion of this issue in his Response in Opposition to Causey's Motion for Summary Judgment—or at the hearing on his Motion for Summary Judgment after briefing was complete.[9] *See* Answer [39]; Motion for Summary Judgment [68]; Memorandum in Support [69] of Motion for Summary Judgment; Motion to Strike [81]; Memorandum in Support [82] of Motion to Strike; Reply in Support [83] of Motion for Summary Judgment; Amended Answer [110].

## A. Standard of review

Causey seeks reconsideration under Federal Rules of Civil Procedure 59 and 60. But because the Memorandum Opinion and Order [89] denying summary judgment was interlocutory, the Court must consider Causey's request for reconsideration under Federal Rule of Civil Procedure Rule 54(b). *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) (finding that it is Rule 54 rather than Rule 59 that allows district courts to revise interlocutory orders); *see also* FED. R. CIV. P. 60(b) advisory committee's note to 1946 amendment (stating that "interlocutory

---

[9] Although Hernandez acknowledges that Causey failed to address the *Bivens* issue, he does not argue that Causey waived it by failing to address it at the summary judgment stage. *See Hernandez*, 137 S. Ct. at 2006 (vacating and remanding for the Fifth Circuit to address the *Bivens* question); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (dismissing plaintiff's *Bivens* claim even though the *Bivens* issue was not raised in the district court and the district court did not *sua sponte* address it); *Butts v. Martin*, 877 F.3d 571 (5th Cir. 2017) (remanding for the district court to consider whether a "new context" under *Bivens* was presented when that issue was not addressed previously).

judgments are not brought within the restrictions of [Rule 60], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires").

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). While the Rule 54(b) standard is less exacting than Rule 59(e), "courts have looked to the kinds of consideration under those rules for guidance." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. September 23, 2002) (citation omitted); *Hillie v. Williams*, No. 4:17-CV-69-DMB, 2018 WL 280531, at *1 (N.D. Miss. Jan. 3, 2018) (citing *eTools Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. Jul. 31, 2012) (collecting cases)). Specifically, some courts consider whether (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in the law alters the appropriate outcome. *Livingston Downs Racing Ass'n.*, 259 F. Supp. 2d at 475-76. It is well established that courts have broad discretion in deciding whether to grant a motion for reconsideration. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

## B. *Bivens* jurisprudence

As noted in the Court's prior Opinion, the Supreme Court in *Bivens* recognized an implied right of action for damages against federal officers who are alleged to have violated a citizen's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The "core holding of *Bivens*," the Supreme Court later instructed, is "recognizing in limited circumstances a claim for money damages against federal officers who abuse their constitutional authority." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001).

Following *Bivens*, however, the Supreme Court has "adopted a far more cautious course" in finding implied causes of action. *Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1855–56 (2017). Indeed, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and it has done so only twice since deciding *Bivens*. *Id*. at 1857 (citation omitted); *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (finding Eighth Amendment's Cruel and Unusual Punishments Clause provided a prisoner's estate with a remedy for failing to provide adequate medical treatment); *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (finding Fifth Amendment Due Process Clause gave a Congressman's assistant a damages remedy for gender discrimination). Since the Supreme Court's decision in *Carlson* in 1980, it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar*, 137 S. Ct. at 1857 (collecting cases).

"[R]ather than dispense with *Bivens* altogether," the Supreme Court has instructed lower courts to proceed with caution when asked to find a *Bivens* remedy. *Egbert*, 142 S. Ct. at 1803. When considering whether to extend *Bivens*, courts apply a two-part test. Under this test, courts should first consider whether the case presents a new context. *Hernandez v. Mesa*, --- U.S. ----, 140 S. Ct.

735, 743, 206 L. Ed. 2d 29 (2020). "Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special facts that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881.

### i. New context

Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citing *Bivens*, 403 U.S. at 389–90; *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980)). Virtually everything else is a "new context." *Ziglar*, 137 S. Ct. at 1865 (explaining that "the new-context inquiry is easily satisfied"); *Byrd*, 990 F.3d at 882.

Thus, to determine whether a case presents a new context, the Court must determine whether this case falls squarely into one of the established *Bivens* categories, or if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Oliva*, 973 F.3d at 441–42 (citing *Ziglar*, 137 S. Ct. at 1859). The Supreme Court has provided several examples for how a case might be meaningfully different:

> A case might differ in a meaningful way because of the rank of the officers involved; constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

Here, Hernandez alleges a Fourth Amendment claim for being shot while unarmed and with his hands allegedly in the air. This claim is unfortunately indistinguishable from countless such claims brought against federal, state, and local law enforcement officials—except that Causey is an ICE agent. While Hernandez alleges a Fourth Amendment violation like the plaintiff in *Bivens*, this case differs from the facts presented in *Bivens*. First, Hernandez's Fourth Amendment claims arose on a public street, and not in a private home like in *Bivens*. Second, there was no warrantless search for narcotics—indeed, narcotics were not involved in this case. Instead, the dispute that gave rise to Hernandez's claims involved a shooting by an ICE agent. Third, Causey did not manacle Hernandez in front of his family and did not strip-search him, as was the case in *Bivens*, but rather shot him in his right forearm. While the Supreme Court has extended *Bivens* to include additional contexts such as discrimination based on sex and failure to provide medical attention, neither of these extensions apply here. *See Davis v. Passman*, 442 U.S. 228, 230, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); *see also Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980). Because "even a modest extension is still an extension," the Court finds that this is a new context and must now determine whether any special factors counsel against extending *Bivens*. *Ziglar*, 137 S. Ct. at 1865.

### ii. Special factor analysis

In deciding whether any special factors counsel hesitation about granting the extension, courts consider whether there is a "risk of interfering with the authority of the other branches," whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or

instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."
*Hernandez*, 140 S. Ct. at 743. The Supreme Court has found that "'even a single sound reason to
defer to Congress' is enough to require a court to refrain from creating such a remedy." *Egbert*,
142 S. Ct. at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 593 U. S. ----, ----, 141 S. Ct. 1931, 1937, 210
L. Ed. 2d 207 (2021) (plurality opinion)). The central question of the special factor analysis is,
"who should decide whether to provide for a damages remedy, Congress or the courts?" *Ziglar*,
137 S. Ct. at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983)).
The Supreme Court's recent decision in *Egbert v. Boule* makes it clear that the answer to this
question is almost always Congress. *Egbert*, 142 S. Ct. at 1803.

In *Egbert*, the Supreme Court considered a Fourth Amendment excessive force claim that
"present[ed] 'almost parallel circumstances'" to *Bivens* itself. *Id*. The plaintiff, a United States
Border Patrol confidential informant, ran a bed-and-breakfast on the United States and Canada
border called the "Smuggler's Inn." *Id*. at 1800. The plaintiff claims that a United States Border
Patrol agent entered his property and refused to leave. *Id*. at 1801. The plaintiff claimed that the
Border Patrol Agent lifted him off the ground, threw him against an SUV, and then threw him to
the ground. *Id*. The plaintiff asserted that the Border Patrol Agent used excessive force and caused
him physical injury. *Id*. at 1802. The Supreme Court found that even though *Bivens* and *Egbert*
involved "similar allegations of excessive force and thus present 'almost parallel circumstances'
or a similar 'mechanism of injury,'" there was no *Bivens* cause of action.

In its ruling, the Supreme Court clearly announced that even in cases involving
"conventional" excessive force claims, "the judiciary is comparatively ill suited to decide whether
a damages remedy against any Border Patrol agent is appropriate." *Egbert*, 142 S. Ct. at 1805. The
Supreme Court explained that the *Bivens* inquiry does not invite courts to "independently assess

the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858). And "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, *see Ziglar*, 137 S. Ct. at 1857–1858—no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803. As Justice Gorsuch states in his concurrence, "[i]f the costs and benefits do not justify a new *Bivens* action on facts so analogous to *Bivens* itself, it's hard to see how they ever could." *Egbert*, 142 S. Ct. at 1809 (Gorsuch, J. concurring).

Because the facts before this Court draw even more of a distinction from *Bivens* than those in *Egbert*, and in light of the Supreme Court's mandate that Congress is nearly always better suited to provide a damages remedy, the Court finds that it "may not recognize a *Bivens* remedy." *Hernandez*, 140 S. Ct. at 743.

## C. Hernandez may not bring a *Bivens* action

In its prior Opinion [89], this Court found that Hernandez's Fourth Amendment excessive force claim did not present a "new context" under *Bivens*.[10] But in light of the Supreme Court's opinion in *Egbert v. Boule*, it is clear that *Bivens* claims are even more narrow and limited than this Court found in its prior Opinion. In applying *Egbert* to the facts of this case, the Court finds that

---

[10] This Court relied on the Supreme Court's decision in *Hernandez v. Mesa*, where the Court declined to extend *Bivens* to the context of a cross-border shooting but the Government did not argue that the shooting of an unarmed individual, by itself, is a new context. *Hernandez*, 140 S. Ct. at 758 (*Ginsburg, J. dissenting*) ("Using lethal force against a person who 'poses no immediate threat to the officer and no threat to others' surely qualifies as an unreasonable seizure.") Because the Supreme Court focused on the location of the shooting—the United States and Mexico border—rather than declining to extend *Bivens* to Fourth Amendment unarmed shooting claims altogether, this Court took the position that the Supreme Court was not prohibiting such unarmed shooting cases from qualifying as a *Bivens* claim. Similarly, other courts had long recognized *Bivens* claims in the Fourth Amendment excessive force context. This Court also relied on *Ziglar v. Abbasi*, where the Supreme Court acknowledged the "fixed principle" that plaintiffs may bring *Bivens* suits against federal law enforcement officers for "seizure[s] that violate the Fourth Amendment." *Ziglar*, 137 S. Ct. at 1877. Nevertheless, *Egbert* makes clear now that the type of claim at issue here cannot be brought as a *Bivens* claim under the governing analysis.

Hernandez' Fourth Amendment claim does present a "new context" and that special factors counsel hesitation in extending *Bivens*. Because *Egbert* represents an intervening change in the law, Causey's Motion for Reconsideration [129] is granted. Hernandez may not bring a *Bivens* action against Causey for violations of his Fourth Amendment rights. Hernandez's Fourth Amendment claim is dismissed.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the United States' Motion to Dismiss [120] is GRANTED. Hernandez's tortious supervision and training claim is DISMISSED WITHOUT PREJUDICE and Hernandez's claim for negligent use of deadly force against the United States with respect to the actions of other unnamed ICE agents on the night of the shooting is DISMISSED WITHOUT PREJUDICE.[11]

IT IS FURTHER ORDERED AND ADJUDGED that Causey's Motion for Reconsideration [129] is GRANTED and Hernandez's *Bivens* claim is DISMISSED WITH PREJUDICE.

This, the 29th day of September, 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE

---

[11] Hernandez's intentional tort claim for assault and battery remains outstanding under the FTCA.