**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**GABINO RAMOS HERNANDEZ**                                        **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 2:17-cv-123-TBM-MTP**

**PHILLIP CAUSEY *and* THE**
**UNITED STATES OF AMERICA**                               **DEFENDANTS**

## ORDER

On the evening of July 16, 2016, Immigration and Customs Enforcement ("ICE") agents received a call from a Laurel Police Department officer requesting assistance with translation services. The request was made in connection with a traffic stop for routine traffic violations involving two Hispanic males. The Plaintiff, Gabino Ramos Hernandez, rolled through a stop sign, and Hernandez's brother, who was following behind him in his own vehicle, appeared to be driving while intoxicated. Once the ICE van arrived on scene, Hernandez ran away. Two ICE agents, including Defendant Phillip Causey, then chased Hernandez. Hernandez stopped running and claims that he had his hands raised when Causey shot him, though this heavily disputed by Causey.

Now before the Court is Hernandez's Motion for Leave to File a Fourth Amended Complaint [143] against Causey pursuant to 42 U.S.C. § 1983. For the reasons fully discussed below, Hernandez fails to state an unlawful seizure claim against Causey and does not allege that Causey was acting under color of state law for purposes of his excessive force claim. Accordingly, Hernandez's Motion is denied as any amendment would be futile. To the extent any Section 1983 claims against Causey remain, they are dismissed with prejudice.[1]

---

[1] While the claims against Causey are dismissed, this action will proceed against the United States on Hernandez's remaining claims arising under the Federal Tort Claims Act.

## I. FACTS AND PROCEDURAL HISTORY

This Court has addressed the facts extensively in prior opinions and will therefore provide only a summary here.[2] On July 20, 2016, Laurel Police Department Officer David Driskell initiated a traffic stop after observing two separate vehicles commit routine traffic violations. [1], pg. 2. Hernandez failed to come to a complete stop at a stop sign, and his brother, who was following behind him in a separate vehicle, appeared to be driving while intoxicated. [1], pg. 2. After initiating the stop, Officer Driskell tried to question Hernandez's brother in English, but discovered that his primary language was Spanish. [68-1], ¶ 3. While Officer Driskell obtained basic information from Hernandez's brother in English, the language barrier made it difficult to continue the questioning. [68-1], ¶ 3.

Officer Driskell knew that ICE agents were in the area performing immigration operations, and he called ICE agent Mike McGhee to request translation services. [143-1], pg. 2. Mike McGhee then called Causey and another ICE agent to respond to the scene. At this point, Officer Driskell had not yet spoken to Hernandez. [75-3], pg. 103:5-14. And Officer Driskell never indicated to Hernandez or the ICE agents on the scene that Hernandez was getting a ticket for a traffic offense, was suspected of committing a crime, that he was being detained, or that he was armed or dangerous. [143-1], pg. 2; [75-3], pg. 81:13-23; [75-8] at 0:00-16:28. Instead, the ICE agents were only told that Hernandez was "mouthy." [143-1], pg. 3.

---

[2] Although some of these facts have been revealed through discovery, the Court offers them for context only—as the facts relied on for purposes of this Motion are those offered within Hernandez's Complaint, amendments to the Complaint, and the facts offered in his proposed fourth amended complaint which adopts and amends his prior Complaints. [1]; [5]; [20]; [106]; [143-1]. Summary judgment evidence is not relied upon since the Court applies a 12(b)(6) standard in deciding this Motion.

Once ICE agent Mike McGhee arrived, Police Officer Driskell left Hernandez's brother with ICE agent McGhee, and he went to talk to Hernandez. [68-1], ¶ 4. At that time, Hernandez was talking on the phone to a friend about what would happen to his brother. [75-22], at 42:3-10. Then, Hernandez saw the ICE transportation van, and he ran. *See* [143-1], pg. 2; [75-22], at 42:10-14. Hernandez was already running when the Defendant, ICE agent Phillip Causey, and ICE agent Kyle Le arrived on the scene. [68-3], ¶ 2; [68-4], ¶ 2; *see also* [143-1], pg. 3. ICE agent McGhee told ICE agents Causey and Le to "walk back down to the end of the street and see if you can locate him." [75-1], pg. 23:12-19; [143-1], pg. 4.

Pursuant to this instruction, ICE agents Causey and Le went to see if they could locate Hernandez. Officer Driskell began shining "his flashlight on Hernandez as he was walking up 11th Street, and verbally identifying him as the individual they needed to seize." [143-1], pg. 4. ICE agents Causey and Le advanced towards Hernandez with their weapons drawn and began shouting. [143-1], pg. 5. Hernandez asserts that he had "his hands raised in surrender" when Causey shot him.[3] [143-1], pg. 5.; [1], pg. 3; [5], pg. 4; [20], pg. 4. He also alleges that the bullet struck him "in the right arm and obliterate[ed] part of the radius in [his] right forearm." [143-1], pg. 5.

---

[3] Causey heavily disputes Hernandez's version of the facts and while the Court does not rely on summary judgment evidence for purposes of this motion, for context, the Court notes that Causey asserts in his deposition that Hernandez was reaching into his pocket when Causey discharged his firearm. [68-3], ¶ 3. The Court also notes that ICE agent Le and Laurel Police Department Officer Robertson both testified that Hernandez reached towards his pocket before the shooting. [68-4], ¶ 3; [75-1], pgs. 35:24-36:5; [75-2], pg. 33:3-8; [75-4], pg. 24:16-20; [68-2], ¶ 4.

Along with a tragic factual history, this case also presents a unique procedural history, as the original Complaint was filed in this Court on July 20, 2017.[4] In the original Complaint, Hernandez brought claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), alleging that Causey violated his Fourth, Fifth, and Fourteenth Amendment rights to be free from an unreasonable seizure and excessive use of deadly force. Hernandez later amended his Complaint to allege negligence and intentional tort claims against the United States under the Federal Tort Claims Act ("FTCA"). The Defendants filed a combined Partial Motion to Dismiss [68] for lack of subject matter jurisdiction as to the negligent training and supervision claim under the FTCA and a Motion for Summary Judgment [68] as to the other claims. This Court dismissed Hernandez's negligent training and supervision claim without prejudice for failure to state a claim and allowed Hernandez to file an amended complaint. The Court then addressed the *Bivens* question *sua sponte* and found Hernandez's *Bivens* claim against Causey was the kind of Fourth Amendment search-and-seizure case that courts have adjudicated through *Bivens* actions.[5] [89], pg. 13. After determining that Hernandez's *Bivens* claim did not present a "new context," the Court found a genuine issue of

---

[4] This case has been stayed many times because Causey has been, and is currently, deployed overseas on active military duty. The parties have ordinarily brought the request for a stay to the Court's attention and have agreed to the stay. *See* [29] (staying case until November 30, 2018); [31] (staying case until September 15, 2019); [107] (staying discovery and disclosure deadlines); [135] (denying Hernandez's Motion to Lift Stay and staying case through September 30, 2023); [147] (staying case through November 3, 2024). Despite the various stays, the parties have engaged in lengthy motion practice to determine the ultimate claims at issue.

[5] Despite well established Supreme Court precedent holding that the *Bivens* question is "antecedent" to the question of qualified immunity, Causey provided no briefing and made no objection as to whether Hernandez could bring suit under the *Bivens* framework for a Fourth Amendment excessive force claim. *Hernandez v. Mesa*, ––– U.S. – –––, 137 S. Ct. 2003, 2006, 198 L. Ed. 2d 625 (2017) (Hernandez I). Even after Hernandez analyzed the *Bivens* question in his Response in Opposition to Causey's Motion for Summary Judgment, Causey initially still raised no objection to the validity of Hernandez's claims under *Bivens*.

material fact as to where Hernandez's hands were positioned at the time of the shooting and denied Causey's Motion for Summary Judgment on the basis of qualified immunity.

Following the Court's Memorandum Opinion and Order [89], Hernandez filed an Amended Complaint [106] alleging that the United States is liable for the "tort[i]ous and wrongful supervision and instruction of Phillip Causey and other deportation agents involved in Plaintiff's shooting, in direct contravention of the Plaintiff's Fourth Amendment rights." [106], ¶ XXXVII. In response, the United States filed a Motion to Dismiss [120] Hernandez's tortious supervision and training claim and partial motion to dismiss Hernandez's claim for negligent use of deadly force. The Court granted the United States' Motion to dismiss [120] finding that it lacked subject matter jurisdiction over Hernandez's tortious training and supervision claim because it is barred by the discretionary function exception of the FTCA. The Court also found that Hernandez failed to state a claim for the use of deadly force asserted against the United States with respect to conduct by any ICE agent other than Causey.

Following the Supreme Court's ruling in *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022), Causey also filed a Motion for Reconsideration [129] of the Court's Opinion [89] denying his Motion for Summary Judgment. Causey argued that based on this intervening law, Hernandez's *Bivens* claim must be dismissed as it presents a "new context" and because special factors counsel hesitation about granting an extension. After further consideration, the Court found that "in light of the Supreme Court's opinion in *Egbert v. Boule*, it is clear that *Bivens* claims are even more narrow and limited than this Court found in its prior Opinion" and that "Hernandez' Fourth Amendment claim does present a 'new context' and that special factors counsel hesitation in

extending *Bivens*." [136], pp. 23-24. Accordingly, Causey's Motion for Reconsideration [129] was granted, and Hernandez's Fourth Amendment *Bivens* claim was dismissed.

The Defendants then filed a joint Motion to Dismiss [138] all remaining claims against Causey, which the Court granted in part and denied in part. [142]. Hernandez conceded that all state-law claims against Causey should be dismissed, so they were. The Court also found to the extent that Hernandez alleged a Section 1983 claim against Causey based on his actions as a federal agent acting under color of federal law, such a claim must be dismissed. And although Hernandez failed to plead sufficient facts that Causey was acting under color of state law for 42 U.S.C. § 1983 purposes, rather than dismissing this claim, the Court allowed Hernandez to file a motion for leave to amend his complaint.

In accordance with the Court's Order [142], Hernandez has now filed a Motion for Leave to File a Fourth Amended Complaint [143] against Causey under Section 1983. For the reasons discussed fully below, Hernandez's Motion is denied.[6]

## II. HERNANDEZ'S MOTION FOR LEAVE TO AMEND

"[L]eave to amend under Rule 15(a) is to be freely given[; however,] that generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). In determining whether to grant leave to amend under

---

[6] Hernandez also "reaffirms and adopts" his claims for excessive use of deadly force, negligent use of deadly force and tortious supervision and training against the United States, which were previously dismissed. [143-1], pg. 13; [136]. Although Hernandez's claim against the United States for assault and battery remains, and amendment may therefore be permissible, in its Order [143] allowing Hernandez to file the instant motion, the Court made it clear that the motion and proposed amended complaint were to focus only on "any 42 U.S.C. § 1983 claim against Causey related to whether Causey acted under color of state law." [143], pg. 2. Because Hernandez has not previously sought leave to amend his claims against the United States, his Motion is further denied on this ground.

Rule 15(a), "the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (alteration in original) (citations omitted). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

The Court has allowed Hernandez to file three Amended Complaints [5], [20], [106]. Notably, the most recent amendments apply only to the United States and not Causey. [20]; [106]. Thus, the last time Hernandez provided any amended allegations against Causey was in his second Amended Complaint [5] filed on September 22, 2017. And crucially, there has been no undue delay by Hernandez as this matter has been repeatedly stayed by agreement of the parties because of Causey's military deployment—in fact, Causey recently filed his fourth Motion [147] to stay these proceedings through November 3, 2024, which was granted. Also, a trial date has not been set because of the recurring stay orders. Finally, there has been no repeated failure to cure deficiencies, as this is the first time Hernandez has requested to amend his allegations against Causey since 2017. These factors weigh in favor of allowing the amendment.

So the only question before the Court is whether the amended complaint would be futile. *Legate*, 822 F.3d at 211. Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When conducting a Rule 12(b)(6) analysis, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). The Court must now determine whether Hernandez has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 391 (5th Cir. 2023).

In Hernandez's proposed fourth amended complaint, he "reaffirms and adopts" his *Bivens* claim against Causey, which has already been dismissed. [143-1], pg. 13; [136]. Accordingly, allowing an amendment as to this claim would be futile and his Motion is denied on this ground. Pursuant to the Court's Order [142], however, Hernandez also proposes amendments to his allegations against Causey pursuant to 42 U.S.C. § 1983. [143-1], pp. 8-13. Section 1983 provides that every person who acts under color of state law to deprive another of constitutional or other federal rights shall be liable to the injured party. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court will consider each element in turn—and if Hernandez fails to allege any element, then the amendment is futile.

### A.  Deprivation of a constitutional right

"The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed." *Cantu v. Moody*, 933 F.3d 414, 421 n.2 (5th Cir. 2019) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994)). In his proposed fourth amended complaint,[7] Hernandez claims that Causey acted under the color of state law and deprived "him of basic human rights without due process of law, by unreasonably seizing [Hernandez] without probable cause and with the callous and unreasonable use of excessive force." [143-1], pg. 9. Hernandez specifically pleads claims for unreasonable seizure and excessive force arising under the Fourth, Fifth, and Fourteenth Amendments. *Id*. The Court will first address Hernandez's unreasonable seizure claim arising out of an allegedly pretextual traffic stop and will then turn to his allegations of excessive force. *Brown v. Lynch*, 524 F. App'x 69, 79 n. 3 (5th Cir. 2013) (finding that a claim for excessive force is "separate and distinct" from an unlawful seizure claim).

### 1.  Unreasonable seizure

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). To prevail on an unlawful seizure claim, a plaintiff must prove (1) that a seizure occurred, and (2) that the seizure was unreasonable. *See Torres v. Madrid*, ––– U.S. ––––,141 S. Ct. 989, 1003, 209 L. Ed. 2d 190 (2021). In his proposed fourth amended complaint Hernandez asserts that Causey seized him without probable cause in violation of the Fourth Amendment. Although unclear, it appears that

---

[7] Hernandez specifically amends and seems to incorporate by reference "the facts as stated in his First and Second Supplemental and Amending Complaints," and the Court will therefore consider all facts alleged in these prior complaints. [143-1], pg. 2.

Hernandez's claim arises out of an allegedly pretextual traffic stop. Because a traffic stop is considered a seizure under the Fourth Amendment, the question is whether the seizure was reasonable, i.e., whether there was probable cause that Hernandez committed a traffic violation. *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007); *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014) (finding that an officer has probable cause to conduct a traffic stop when he personally observes the defendant commit the traffic violation).

While not alleged within his proposed fourth amended complaint, Hernandez argues in his Memorandum in Support of his Motion for Leave to File a Fourth Amended Complaint that "there was a meeting of the minds, or at the very least, a tacit agreement between Officer Driskell and the five ICE agents to conduct, as a joint operation with local police, an unlawful stop based solely on race. This tacit agreement was what led directly to the joint operation to pursue and seize Hernandez." [144], pg. 8. He argues that "[s]topping Hispanics without an articulable basis to do so has been denounced by the Supreme Court as a violation of the Fourth Amendment against unreasonable seizures based solely on race in *United States v. Brignoni-Ponce*, 422 U.S. 873, 885-887, 95 S. Ct. 2582-2583, 45 L. Ed. 2d 607, 619-620 (1975)." [144], pp. 7-8. Because Hernandez does not specifically plead a Fourth Amendment claim arising out of an allegedly pretextual traffic stop based solely on race in his proposed fourth amended complaint, the Court need not consider this argument. Thus, any such claim is futile as it is not well pled. But for clarity and completeness of the record, the Court will nevertheless address Hernandez's *argument* that the initial traffic stop was based solely on race in violation of the Fourth Amendment.

A pretextual traffic stop is illegal under Fourth Amendment standards when (1) an officer who initiated a traffic stop lacked reasonable suspicion to believe that a traffic violation occurred

and (2) the officer's subsequent actions were not reasonably related in scope to the circumstances that justified the stop. *United States v. Walker*, 49 F.4th 903, 907 (5th Cir. 2022) (citation omitted); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (treating "routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as *Terry* stops."); *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) ("if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no 'objective basis' for the stop, and the stop is illegal."). The Court will consider each in turn.

### a. Probable cause

Here, Hernandez asserts in his Memorandum that the initial traffic stop was "an unlawful stop based solely on race." [144], pg. 8. But Hernandez is suing Causey individually—not Officer Driskell. And there are no factual allegations within Hernandez's proposed fourth amended complaint, which incorporates by reference all factual allegations asserted in previous complaints, that *Causey* had any information pertaining to Hernandez's race. In fact, the only allegation in his proposed fourth amended complaint that Officer Driskell informed anyone of Hernandez's race stems from Officer Driskell's phone call to ICE Agent McGhee.[8] Specifically, Hernandez alleges that Officer Driskell informed ICE Agent McGhee "of his location and then requested that he assist him in a local traffic stop of a Hispanic male." [143-1], pg. 2. But Hernandez has alleged no facts that Causey was subsequently informed about Hernandez's race before arriving on the scene. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if

---

[8] Although not relied upon for purposes of the instant Motion, the Court does note that Causey testified in his deposition that he was only asked to "bring the van" and was not given any additional information. [75-1], pg. 18:14-25. This could be why no other facts on this issue are set forth in the proposed fourth amended complaint.

doubtful in fact).") (internal quotations omitted); *Waksman v. Cohen*, No. 95-cv-3913-WK, 1998 WL 690091, at *3 (S.D. N.Y. Sep. 30, 1998) ("[a]ny suggestion that the stop was impermissibly race-based is wholly speculative given the state of the record at present."). Without more, Hernandez does not successfully allege that *Causey* violated his Fourth Amendment rights by seizing Hernandez based solely on his race.

Not only are there no facts to support an inference that Hernandez was pulled over solely because of his race—or that Causey was involved in such a decision—such allegations are nevertheless insufficient in the context raised. In fact, the Supreme Court has rejected a Fourth Amendment challenge to a traffic stop allegedly based on race because an officer's motives do not invalidate "objectively justifiable behavior under the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).[9] In other words, an officer's subjective beliefs are irrelevant in determining the validity of a traffic stop under the Fourth Amendment. *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) ("[t]his is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop."). Therefore, to successfully allege that a traffic stop is pretextual for

---

[9] Additionally, in *Whren*, the Supreme Court explained that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

Fourth Amendment purposes, Hernandez must provide factual allegations that the traffic stop was invalid or initiated without probable cause. He does not.[10]

In fact, Hernandez acknowledges that ICE agents "responded to a request from local police officers to assist with translating Spanish in connection with a stop of two Hispanic individuals *for routine traffic violations*." [1], pg. 2 (emphasis added). And Hernandez further admits that he personally was pulled over for "failing to come to a complete stop." [1], pg. 2.[11] Therefore, by Hernandez's own allegations, even if the initial traffic stop were pretextual, it "[did] not violate the Fourth Amendment [because] the officer making the stop ha[d] 'probable cause to believe that a traffic violation ha[d] occurred.'" *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (quoting *Wren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)); *United States v. Walker*, 49 F.4th 903, 907 (5th Cir. 2022) ("A traffic stop is justified at its inception when an officer has 'an objectively reasonable suspicion that some sort of illegal activity, such as a traffic

---

[10] In support of his allegations, Hernandez relies on the Supreme Court's decision in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2582, 45 L. Ed. 2d 607, (1975). There, border patrol officers "relied on a single factor to justify stopping respondent's car: the apparent Mexican ancestry of the occupants." *Brignoni-Ponce*, 422 U.S. at 886. The Supreme Court held that "this factor alone would justify neither a reasonable belief that they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in the country." *Id.* Accordingly, the Supreme Court found that the stop violated the Fourth Amendment's protection against unreasonable seizures. In so finding, the Supreme Court held that border patrol officers must have reasonable suspicion, together with specific articulable facts, "that the vehicles contain aliens who may be illegally in the country." *Brignoni-Ponce*, 422 U.S. at 884. Not only are there no facts to support an inference that Hernandez was pulled over solely because of his race, Hernandez admits that there was reasonable suspicion for the initial stop because he was pulled over for rolling through a stop sign. Therefore, apart from reiterating that reasonable suspicion must exist before initiating a stop, the Court finds *United States v. Brignoni-Ponce* inapplicable to the facts alleged.

[11] Hernandez's brother was following behind him in a separate vehicle and was pulled over for driving under the influence. [1], pg. 2.

violation, occurred, or is about to occur, before stopping the vehicle.'") (citation omitted).[12] Because there are no factual allegations supporting an inference that the initial traffic stop was invalid or initiated without probable cause, Hernandez fails to satisfy the first prong of the Fourth Amendment pretext analysis.

### b.  Reasonably related in scope

Next, the Court must determine whether Hernandez has alleged facts showing that Officer Driskell and the ICE agent's "subsequent actions were [not] reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). To begin, the factual allegations in support of the second prong of the Fourth Amendment pretext analysis focus solely on "the pretextual need for translation assistance with *Mendoza*," Hernandez's brother, rather than Hernandez himself. [143-1], pg. 12 (emphasis added). In fact, the proposed fourth amended complaint makes no allegation that Hernandez was detained pending questioning, or that any subsequent detention of Hernandez—or Mendoza—was improperly extended by waiting on ICE agents to arrive for translation assistance.

Instead, it is alleged that, after initiating the traffic stop, Officer Driskell conversed with Mendoza and then called ICE agent Mike McGhee for translation assistance. [143-1], pg. 10. "While waiting for all of the ICE agents to arrive, Officer Driskell began filling out a citation with

---

[12] *Ashcroft v. al-Kidd*, 563 U.S. 731, 740, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (finding no Fourth Amendment violation where there are no allegations that the arrest was unconstitutional absent the alleged pretext); *United States v. Shaw*, No. 19-cr-157-MLH, 2020 WL 3816312, at *8 (W.D. La. Feb. 21, 2020) (finding traffic stop was justified because the officers observed the vehicle failing to "come to a complete stop at a stop sign."); *Lafleur v. City of Westwego*, No. 10-cv-363-LMA, 2011 WL 802612, at *5 (E.D. La. Feb. 28, 2011) (finding no Fourth Amendment violation because officer's decision to initiate a traffic stop was justified after observing the vehicle failing to come to a complete stop at a stop sign); *United States v. Aguilar*, No. 07-cr-844-AML, 2008 WL 11357945, at *5 (W.D. Tex. Oct. 29, 2008) (finding objectively reasonable basis for initiating the traffic stop because the officer observed the vehicle failing to come to a complete stop at a stop sign).

Mendoza for DUI." [143-1], pg. 10. Officer Driskell also called a fellow Laurel Police Department officer and requested he bring a portable breathalyzer machine, which was administered before the ICE agents arrived. [143-1], pg. 11. According to Hernandez, "[a]fter Officer Driskell had performed the breathalyzer test, and sent for the DUI transport unit, there was nothing further he needed to do with *Mendoza*, and had no need for any translation assistance in Spanish from anyone." [143-1], pg. 11 (emphasis added). Hernandez finally alleges that "no translation assistance was ever given by any ICE agent." [143-1], pg. 12.

Based on these allegations, Hernandez has not alleged a violation of his *own* individual Fourth Amendment rights, and such allegations are therefore subject to dismissal. Indeed, "[a] party cannot assert a Section 1983 claim on behalf of someone else; he must instead establish a personal deprivation of one of his own rights or privileges secured by the Constitution." *Demarsh v. Gabriel*, No. 4:07-cv-194-RAS, 2008 WL 783463, at *2 (E.D. Tex. Mar. 25, 2008) (citing *Brumfield v. Jones*, 849 F.2d 152, 154 (5th Cir. 1988)); *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (finding the prisoner would lack standing to seek Section 1983 damages for violating other prisoners' rights); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("a section 1983 complaint must be based upon the violation of [a] plaintiff's personal rights, and not upon the rights of someone else."); *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986); *King v. Corrections Corp. of Am.*, No. 4:06-cv-77-WAP, 2006 WL 2265064 (N.D. Miss. Jul. 31, 2006).

Regardless, Hernandez provides no allegations that *Causey* questioned anyone at the scene or that such questioning was improper. But even if he did, "[m]ere [officer] questioning, without some nonconsensual restraint on one's liberty, is not a 'seizure' or detention" under the Fourth Amendment. *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (citation omitted). "The

reasoning behind this rule is that the Fourth Amendment protects against *detention*, not *questioning*." *Pack*, 612 F.3d 341, 350 (emphasis added); *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993) (explaining that "detention, not questioning, is the evil at which *Terry's* second prong is aimed."). And again, there are no allegations that Hernandez was improperly detained pending the arrival of ICE agents to question him. Without more, Hernandez fails to state a viable Fourth Amendment unreasonable seizure claim against Causey.

### 2. Excessive force

Having found that amendment of Hernandez's unreasonable seizure claim would be futile, the Court now turns to Hernandez's other Fourth Amendment claim, which is based upon excessive force. The Supreme Court has held that "our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Terry*, 392 U.S. at 22-27). Even so, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985); *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 394. Notably, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Id.* at 396. So to prevail on an excessive force claim, the plaintiff must show that the use of force was excessive, and "that the excessiveness of the force was unreasonable." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (citation omitted).

According to Hernandez's factual allegations, the ICE agents knew they were being called to the scene to assist with translation services for a routine traffic stop for a Hispanic male. [143-1], pg. 2. Hernandez asserts, however, that Causey was never told that Hernandez had committed any crime, that he was under arrest or escaping, or that Hernandez was armed or dangerous. [143-1], pp. 7, 9; [1], pg. 2; [5], pg. 3; [20], pg. 4. Instead, Hernandez alleges that Causey was only told that Hernandez was "mouthy." [143-1], pg. 3. Regardless, at the time of the shooting, Hernandez alleges he had "his hands raised in surrender" when Causey shot him. [143-1], pg. 5.; [1], pg. 3; [5], pg. 4; [20], pg. 4.

The Fifth Circuit has explained that the excessive force inquiry is confined to whether the officer "was in danger at the moment of the threat that resulted in the [officer's] shooting [of the victim]." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001); *Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020) (quoting *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) ("So, the focus of the inquiry should be on 'the act that led [the officer] to discharge his weapon[.]"). And other courts have found allegations that a plaintiff's hands were raised at the time of the shooting sufficient to state a claim for excessive force. *Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020) (finding genuine issues of material fact as to reasonableness of excessive force when officers shot the plaintiff when he was standing motionless thirty feet away from the officers with his hands in the air); *Cullum v. Siemens*, No. SA-12-cv-49-DAE, 2013 WL 5781203, at *9–10 (W.D. Tex. Oct. 25, 2013) (finding deadly force was unreasonable because the armed suspect's

hand was "palm-up in a 'stop' gesture" that was "submissive" and he did not present an immediate threat); *Jamison v. Metz*, 541 F. App'x. 15, 19–20 (2nd Cir. 2013) (holding that officers were not entitled to qualified immunity where the suspect had stopped and was in an act of surrendering by putting his hand in the air); *Robinson v. Nolte*, 77 F. App'x. 413, 414 (9th Cir. 2003) (holding that the use of deadly force violated the suspect's Fourth Amendment rights where the suspect had "his arms raised over his head in a classic surrender position, with a gun in his lap").

Therefore, based on Hernandez's allegation that his hands were raised when Causey shot him, Hernandez has alleged a Fourth Amendment claim for excessive force—at least at this stage—and the Court will now turn to the second prong of the Section 1983 analysis.[13] *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004); *Benavides v. Harris Cnty., Texas*, --- F. Supp. 3d ----, 2023 WL 4157160, at *6 (S.D. Tex. 2023) (finding plaintiff stated a claim for excessive force under Section 1983 because the plaintiff "(1) posed no threat, (2) was not resisting, (3) was not fleeing, (4) was unarmed, and (5) was shot 'almost instantaneously.'").

**B.  Under color of state law**

Having found that Hernandez has alleged a deprivation of his Fourth Amendment right to be free from excessive force, the question now becomes whether Hernandez has alleged that Causey acted under color of state law as required for Section 1983 liability. "Section 1983 is of limited scope." *District of Columbia v. Carter*, 409 U.S. 418, 425, 93 S. Ct. 602, 34 L. Ed. 2d 613

---

[13] It appears from his proposed fourth amended complaint that Hernandez pleads, in the alternative, that his excessive force claim is actionable under the due process clause of the Fifth Amendment and Fourteenth Amendment. *See Hernandez v. United States*, 757 F.3d at 26 (explaining that "when a claim is not covered by the Fourth Amendment, we have recognized that an excessive-force claim may be asserted as a violation of due process."). Since plaintiffs may plead conflicting theories in their complaint, an amendment would not be futile on allegations of excessive force in violation of the due process clause of the Fifth Amendment and Fourteenth Amendment. *See Fredonia Broad. Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 801 (5th Cir. 1973).

(1973). Indeed, Section 1983 provides a remedy only if the deprivation of federal rights takes place "'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,' more commonly known as the 'under color of state law' or 'state action' requirement." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (explaining that if the conduct at issue constitutes "state action," then it is "also action under color of state law and will support a suit under § 1983.")). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d. 40 (1988) (citation omitted).

Because Section 1983 "only provides redress for actions taken under color of state law," it is well established that Section 1983 does not apply to "actions [] taken pursuant to federal law by federal agents." *Zernial v. United States*, 714 F.2d 431, 435 (5th Cir. 1983) (citing *Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982) (actions of federal officials taken under color of federal law cannot support a claim under section 1983) (additional citations omitted)); *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). In fact, "actions of the Federal Government and its officers are at least facially exempt from" Section 1983 liability. *District of Columbia v. Carter*, 409 U.S. 418, 424-25, 93 S. Ct. 602, 34 L. Ed. 2d 613 (1973). Despite this facial exemption, courts have held that "federal officials are subject to section 1983 liability . . . where they have acted under color of state law, for example in conspiracy with state officials." *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3rd Cir. 1998); *Knights of Ku Klux Klan Realm v. East Baton Rouge Par. Sch. Bd.*, 735 F.2d 895, 900 (5th Cir. 1984) ("Ordinarily, when federal officials conspire or act jointly with state officials to deny constitutional

19

rights, 'the state officials provide the requisite state action to make the entire conspiracy actionable under section 1983.'").

Contrary to this authority, however, Hernandez argues that to state a Section 1983 claim against Causey, he need not allege that there was a conspiracy between Causey and state officials. Instead, Hernandez argues that Causey may be held liable under Section 1983 merely because Causey was "a willing participant in a joint activity with state actors." [144], pg. 3. Hernandez is incorrect. First, Hernandez's attempt to hold Causey liable under what is known as "the joint action test" is misguided, as this test applies only to private individuals—not federal officials. Second, even if it did apply to federal officials, Hernandez misconstrues what is required to state a Section 1983 claim within the Fifth Circuit under the joint action test. Indeed, in this Circuit, both the joint action test and the traditional conspiracy analysis nevertheless require Hernandez to allege facts that would support an inference that Causey and Laurel police officers came to an *agreement* to commit an *illegal* or *unconstitutional* act.[14] As detailed below, he fails to do so. Finally, Hernandez wholly fails to allege a conspiracy claim against Causey. For these reasons, any amendment to Hernandez's Section 1983 Fourth Amendment excessive force claim against Causey would be futile.

---

[14] To "maintain a claim that a private citizen is liable under § 1983 based on joint action with state officials," a plaintiff must allege, "facts showing an *agreement* or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 247 (5th Cir. 2020) (quoting *Polacek v. Kemper Cnty.*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010) (emphasis added)). While *Pikaluk* is unpublished, this Court does find it persuasive that some form of agreement is required over and above simply action. Similarly, to a establish a Section 1983 conspiracy claim, a plaintiff must allege facts that indicate (1) "an *agreement* between the . . . defendants to commit an illegal act" and (2) "an actual deprivation of constitutional rights." *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (emphasis added)).

1.  **The "joint action test" applies to private individuals rather than federal officers**

A private individual ordinarily cannot be held liable under Section 1983 because liability under the statute requires action taken under color of state law. "The United States Supreme Court has utilized numerous tests to determine whether the conduct of a private actor can be fairly attributed to the state." *Turnage v. Mississippi Power Company*, 2023 WL 8643632, *2 (5th Cir. 2023). Relevant here is the "joint action test," which asks, in part, "whether private actors were 'willful participant[s] in joint action with the State or its agents.'" *Pikaluk v. Horseshoe Entertainment, L.P.*, 810 F. App'x 243, 246 (5th Cir. 2020) (quoting *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)). Hernandez argues that Causey is liable under Section 1983 because he "was a willing participant in a joint activity with Laurel police officers to pursue, locate, and seize Hernandez." [143-1], pg. 8. Despite Hernandez's argument to the contrary, the "joint action test" applies to private individuals—not federal officials. While it can be confusing, what is perfectly clear is that to allege a Section 1983 claim against a federal official, Hernandez must allege that Causey acted under color of state law by engaging in a conspiracy with Laurel Police Department officers to violate Hernandez's Fourth Amendment right to be free from excessive force.

Although similar in application, the potential need for different tests in some circuits for private individuals and federal officials does make sense. Private individuals, unlike federal officials, have no inherent authority to act under color of law. *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) ("Private individuals generally are not considered to act under color of law."); *West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state

law and made possible only because the wrongdoer is clothed with the authority of state law.'"); *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 387 (5th Cir. 1985) ("private conduct constitutes 'state action' if the connection between the state and the acts justifies treating the private actor as an agent of the state or otherwise warrants attributing [his] behavior to the state."). With no inherent authority to act under color of law, a private individual's action cannot be deemed state action, unless of course, the private individual engages in such joint activity with a state actor who has such inherent authority to act under color of state law. But without this joint activity, the private individual's conduct remains purely private and outside the scope of Section 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct."). As referenced previously, in this Circuit, an agreement is required as well.

Federal officials are different from private individuals though. Federal officials have inherent authority to act under color of law. *See Zernial v. United States*, 714 F.2d 431, 435 (5th Cir. 1983) (citing *Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982). Thus, the question for imposing Section 1983 liability against a federal official is not whether the federal official acted under color of law, but whether the federal official acted under color of *state* law. And the majority of courts confronted with this issue have held that allegations of "joint participation" alone are insufficient to successfully allege a Section 1983 conspiracy against federal officers. *Adams v. Springmeyer*, No. 11-cv-790-NBF, 2012 WL 1865736, at *6 (W.D. Pa. May 22, 2012) (finding allegations of a "*joint conspiracy*, not joint participation," are required for Section 1983 liability against federal officers).[15]

---

[15] *Economan v. Cockrell*, No. 1:20-cv-32-WCL, 2020 WL 6874134, at *20 (N.D. Ind. Nov. 23, 2020) ("We see no reason why a joint conspiracy between federal and state officials should not carry the same consequences under Section 1983 as does joint action by state officials and private persons); *Fernandes v. City of Broken Arrow*, No. 16-cv-630-CVE, 2017 WL 471561, at *4 (N.D. Okla. Feb. 3, 2017) (finding that allegations of "joint operation" insufficient

Such a conclusion makes sense because a federal official who simply engages in a joint activity with a state actor does not act under color of state law unless there is an agreement. *Morales v. City of New York*, 752 F.3d 234, 237 (2nd Cir. 2014) ("Absent specific allegations that [defendant] conspired with State agents to violate [plaintiff's] rights, [defendant] is therefore presumed to have acted under Federal authority."). In fact, "[m]ost courts agree that *conspiracy* with state actors is a requirement to finding that federal actors jointly acted under color of state law." *Big Cats of Serenity Springs, Inc. v. Rhodes,* 843 F.3d 853, 869 (10th Cir. 2016) (emphasis added) (citing *Strickland ex rel. Strickland v. Shalala*, 123 F.3d 863, 866–67 (6th Cir. 1997)); *Knights of Ku Klux Klan Realm*, 735 F.2d at 900.[16] Because Causey is a federal officer and not a private individual, allegations of conspiracy—rather than joint action—are necessary to allege a Section 1983 claim against him.

### 2. Regardless, at least in this Circuit, the first step in both the "joint action test" and the traditional conspiracy analysis require allegations of an agreement with a state actor

The Fifth Circuit has held that to "maintain a claim that a private citizen is liable under § 1983 based on joint action with state officials," a plaintiff must allege, (1) "facts showing an *agreement* or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right" and (2) "that the private actor was a

---

to find federal officers to be acting under color of state and noting that the plaintiff did not allege that the federal officers conspired with the state actors); *Kletschka*, 411 F.2d at 448 (finding federal official may be liable for joint conspiracy with state officials under Section 1983).

[16] *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 2016) (finding that allegations of conspiracy are necessary to hold federal officials liable under Section 1983 for joint action with state actors); *Arar v. Ashcroft*, 585 F.3d 559, 568 (2nd Cir. 2009); *Hindes*, 137 F.3d at 158; *Strickland ex rel. Strickland v. Shalala*, 123 F.3d 863, 866-67 (6th Cir. 1997); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987); *Scott v. Rosenberg*, 702 F.2d 1263, 1268–69 (9th Cir. 1983); *Kletschka v. Driver*, 411 F.2d 436, 448 (2nd Cir. 1969).

willing participant in joint activity with the state or its agents." *Pikaluk v. Horseshoe Ent., L.P.*, 810 F. App'x 243, 247 (5th Cir. 2020) (quoting *Polacek v. Kemper Cnty.*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010) (emphasis added)). Similarly, to a establish a Section 1983 conspiracy claim, a plaintiff must allege facts that indicate (1) "an *agreement* between the . . . defendants to commit an illegal act" and (2) "an actual deprivation of constitutional rights." *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (emphasis added)); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (explaining that to succeed on a Section 1983 conspiracy claim, a plaintiff "must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights."). Therefore, to succeed under *either* theory, Hernandez must first allege that Causey came to an agreement or meeting of the minds with Laurel Police Department officers to violate Hernandez's Fourth Amendment rights to be free from excessive force. He fails to do so.[17]

In his proposed fourth amended complaint, Hernandez alleges that "immediately upon arrival, [Causey] began working jointly with Officer Driskell and Officer Robertson to pursue, stop, and seize Hernandez for questioning in this local police operation, although no probable cause existed to seize Hernandez." [143-1], pg. 3. As factual support, Hernandez alleges that Police

---

[17] Hernandez does allege that there was a pretextual agreement between Officer Driskell and the ICE agents that Officer Driskell "would request assistance in translating Spanish, even though no translation assistance was needed or ever intended to be given, in order that ICE agents could have the opportunity to question any Hispanic male Driskell may have stopped." [143-1], pg. 9. But not only does Hernandez fail to allege that such an agreement violates the constitution, he wholly fails to plead any facts that could demonstrate how such a request for translation services was the proximate cause for Hernandez's injury. Indeed, Hernandez alleges no facts whatsoever that Causey was asked to provide translation services, that Causey was ever informed of Hernandez's race before arriving on scene, or even facts pertaining to Causey's knowledge about the request for translation services. Instead, Hernandez appears to plead these facts as an attempt to bolster his unreasonable seizure claim. Of course, courts only decide cases and controversies—and without a well-pleaded cause of action, it is not for this Court to opine on whether the request for translation services at issue was unconstitutional or not. Accordingly, with no constitutional violation alleged, the Court will not consider the allegedly pretextual request for translation services at the second step of the Section 1983 analysis.

Officer Driskell, "in order to assist [Causey] in locating and seizing Hernandez, began shinning (sic) his flashlight on Hernandez as he was walking up 11ᵗʰ Street, and verbally identifying him as the individual they needed to seize." [143-1], pg. 4. Hernandez also alleges that after "corralling Hernandez . . . Causey effectuated the seizure of Hernandez by shooting to kill, although Hernandez was unarmed, presented no threat or danger to anyone, and had his hands raised in surrender." [143-1], pg. 5.

But "it is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are *conclusions*, not *facts*." *Polacek v. Kemper Cnty., Mississippi*, 739 F. Supp. 2d 948, 953 (S.D. Miss. 2010) (emphasis in original). To meet his burden, Hernandez must provide specific facts to support his claim. *Harrison v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, –––F. App'x ––––, 2006 WL 558902, *1 (5th Cir. Mar. 8, 2006) (recognizing that while "a non-state actor may be liable under [§ ] 1983 if the private citizen was a willful participant in joint activity with the State or its agents," "[a]llegations that are merely conclusory, without reference to specific facts, will not suffice"). Upon careful review, nowhere in his proposed fourth amended complaint does Hernandez allege any *facts* that Causey came to an agreement or meeting of the minds with Laurel police officers to seize Hernandez—much less to shoot him. In fact, each allegation concerning the shooting focuses solely on Causey's conduct, which gives rise to the inference that the decision to shoot Hernandez was Causey's decision alone, not the result of some prior agreement. [143-1], pp. 5, 6, 9, 12.

So even if the joint action test applied to federal officials—which it does not—Hernandez nevertheless fails to meet his burden under the first element and allowing the amendment of Hernandez's excessive force claim under this theory would be futile. *See Polacek*, 739 F. Supp. at

953 (finding similarly bare factual allegations "accepted as true, do not indicate the type of joint action necessary to convert the private defendants' actions into state action."); s*ee also Johnson v. Dettmering*, No. 19-cv-744-BAJ, 2021 WL 3234623, at *4 (M.D. La. Jul. 29, 2021).

But even if Laurel Police Department officers did come to an agreement with Causey to seize Hernandez—which they did not—such an agreement would not be illegal under these facts as required to state a Section 1983 conspiracy claim. As previously discussed, Hernandez acknowledges that he was pulled over for failing to come to a complete stop at a stop sign. [1], pg. 2. And the Fourth Amendment is not violated where officers seize, with reasonable force, an individual fleeing from a traffic stop. *See Lytle v. Bexar Cnty., Texas*, 560 F.3d 404, 416 (5th Cir. 2009); *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) ("[W]hatever the circumstances prompting law enforcement officers to use force, whether it be self-defense, defense of another or resistance to arrest, where, as here, a fourth amendment violation is alleged, the inquiry remains whether the force applied was reasonable."). Without any facts alleging an *agreement* between Laurel Police Department officers and Causey to commit an illegal act—such as an alleged shooting of an armed man with his hands up—he cannot state a Section 1983 conspiracy claim against Causey and amendment would be futile. *Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983."); *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) ("A conclusory allegation of conspiracy is insufficient.") (citation omitted).

### 3. Hernandez fails to state a conspiracy claim

Hernandez explicitly argues in his Memorandum in support of his Motion "that Defendant Causey deprived Hernandez of rights under the Constitution because he was the one who shot [Hernandez], who was unarmed with his hands raised in surrender, *not because he was a co-conspirator to violate Constitutional rights*." [144], pg. 7 (emphasis added). Accordingly, by Hernandez's own pleadings, he concedes any claim for conspiracy and the Court need not continue as amendment of any Section 1983 claim would clearly be futile. But even if he had not conceded his conspiracy claim, it would still be futile because as discussed at length above, Hernandez fails to allege any facts that there was an agreement between Laurel Police Department officers and Causey to violate Hernandez's Fourth Amendment rights.

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Hernandez's Motion for Leave to Amend [143] is DENIED. To the extent that any 42 U.S.C. § 1983 claims against Causey remain, such claims are DISMISSED WITH PREJUDICE.

This, the 14th day of February, 2024.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE